IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 18-CR-3673-WJ |
| **RAYLON CASTILLO**, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO POLYGRAPH TESTING AS CONDITION OF SUPERVISED RELEASE

THIS MATTER comes before the Court following a hearing on *Defendant's Formal Objections to Presentence Report* (Doc. 30) which was filed on June 20, 2019 by Defendant Raylon Castillo (hereinafter "Defendant" or "Castillo"). At the hearing on July 15, 2019, the Court ruled on Defendant's other sentencing objections and took the objection to the proposed special condition of supervised release requiring Castillo to submit to polygraph testing under advisement. The Court now addresses Defendant's objection to the polygraph condition of his terms of supervised release, as provided in Doc. 25-1/Doc. 34-1. Having reviewed the relevant law and the parties' arguments, the Court finds that Defendant's objection is not well-taken and, therefore, is **OVERRULED**.

### BACKGROUND

In May of 2015, Castillo was indicted on the charge of aggravated sexual abuse of a minor in Indian Country, in violation of 18 U.S.C. §§ 1153, 2243(a) and 2246(2)(A). 15-CR-1802, Docs. 1, 26. In 2016, Castillo pleaded guilty to sexual abuse of a minor in front of U.S. District Judge Robert Brack, who sentenced Castillo to thirty months' imprisonment, followed by five years of

supervised release. 15-CR-1802, Doc. 47. Castillo was required to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA) as a condition of his conviction, which Castillo did on September 29, 2016 when he registered with the Bernalillo County Sheriff's Office. PSR, ¶¶ 9–10. Castillo established his residence at the La Posada Halfway House on December 21, 2017, but he absconded about a week later and did not update his residency information as required under SORNA. PSR, ¶ 11. In April 2018, Farmington, New Mexico law enforcement officers arrested Castillo on unrelated charges. PSR, ¶ 13. In May 2018, the United States Probation Officer petitioned for revocation of Castillo's supervised release from the sexual abuse conviction on the grounds that he had violated his conditions of supervised release. 15-CR-1802, Doc. 87. Judge Brack imposed an eighteen-month sentence upon Castillo's admission of his violation. 15-CR-1802, Doc. 98.

On November 7, 2018, Castillo was indicted on a single count of failing to update sex offender registry status, in violation of 18 U.S.C. § 2250(a) and 34 U.S.C. § 20913. 18-CR-3673, Doc. 1. Castillo is now before the undersigned judge for sentencing upon pleading guilty to the failure to register charge pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement. Doc. 22.

Castillo filed his *Sentencing Memorandum* (Doc. 29) and his *Formal Objections to the Presentence Report* (Doc. 30), and the Government responded (Doc. 32). At the hearing on July 15, 2019, this Court addressed the objections raised by Castillo, including the six-level enhancement to his offense level, the risk notification condition, and the restriction barring Castillo from places used primarily by children. Doc. 33, Clerk's Minutes. The Court ruled that the total adjusted Sentencing Guidelines offense level is 12 and the criminal history category is III, yielding an advisory guideline sentencing range of 15–21 months. Doc. 33. The final objection to the Pre-

Sentence Report (PSR) before the Court stems from the polygraph condition, which requires that Castillo "must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider." Doc. 25-1/Doc. 34-1, Conditions Attachment to PSR; Doc. 30.

## DISCUSSION

Castillo objects to the polygraph condition on several grounds, which are addressed in turn below. First, he argues that the special polygraph condition violates his Fifth Amendment privilege against self-incrimination. Second, he argues that this condition is an improper delegation because it grants the probation officer decision making authority that should be reserved for the judiciary. Third, Castillo claims that the probation officer has failed to identify how this condition is reasonably necessary to achieve the statutory goals of supervised release as provided in 18 U.S.C. § 3583(d). Furthermore, at the hearing, defense counsel argued that, should the Court require the polygraph testing condition, the examiner should inform defense counsel of the anticipated questions ahead of time so that defense counsel can advise Castillo about answering them.

### I.  Fifth Amendment Privilege Against Self-Incrimination[1]

As the Tenth Circuit Court of Appeals has explained,

---

[1]  The Court noted at the hearing that Castillo raised an objection to any type of polygraph examination unless defense counsel has an opportunity to advise her client on whether or not to answer any of the questions based on the Fifth Amendment. To the extent that the Government relies on *United States v. Mike*, 632 F.3d 686 (10th Cir. 2011), to argue that the Fifth Amendment is not implicated unless and until incriminating statements have already been made (Doc. 32 at 8), the Tenth Circuit's more recent ruling in *United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016), allows the Court to address the polygraph condition as a term of supervised release at this time. In *Von Behren*, discussed in detail herein, the district court and the Tenth Circuit ruled on the Fifth Amendment issue despite the defendant not having answered the disputed polygraph questions. The Tenth Circuit's grant of an emergency stay of the polygraph test and subsequent reversal of the district court's ruling shows that this issue may be properly raised and considered prior to the defendant undergoing the polygraph. *See* 822 F.3d at 1143, 1151.

Although the defendant in *Von Behren* was en route to the polygraph exam, this Court pointed out at the hearing that deferring a ruling on the objection to the polygraph condition would only be "kicking the can down the road" because the issue would resurface in the future if a treatment provider determined that a polygraph assessment was necessary—in which case the Court would then take up the same arguments at that time. *Von Behren* thus allows the Court to address—but not to the fullest extent, for reasons explained below—the imposition of this condition prior to the polygraph being administered. *Cf. United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) ("By determining a challenge to the polygraph testing requirement to be generally ripe, however, we do not imply that all specific challenges to the implementation of this condition are necessarily ripe.").

> The Fifth Amendment's privilege against self-incrimination applies not only to persons who refuse to testify against themselves at a criminal trial in which they are the defendant, but also 'privileges [them] not to answer official questions put to [them] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [them] in future criminal proceedings.'

*United States v. Von Behren*, 822 F.3d 1139, 1144 (10th Cir. 2016) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)). For a communication to receive Fifth Amendment privilege, it must be testimonial, incriminating, and compelled. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004). The Tenth Circuit, joining other circuits, has ruled that statements made during polygraph examinations may be protected by the Fifth Amendment because "[t]here is no doubt that answering questions during a polygraph examination involves a communicative act which is testimonial." *Von Behren*, 822 F.3d at 1144. *Von Behren* noted that the issues of incrimination and compulsion are "less certain" in the context of when a clinical polygraph examination is included as a special condition of a defendant's supervised release. *Id.*

The Fifth Amendment privilege is normally not self-executing, which means that a defendant or witness must affirmatively claim it to receive its protection; however, an exception exists for "penalty cases." *Id.* at 1149. The Fifth Amendment prohibits the government from "threatening to impose substantial penalties" because the defendant invokes the Fifth Amendment protection to not give incriminating testimony against himself. *Id.* at 1147 (citation and quotation marks omitted). The Supreme Court has explained that not all penalties are so great as to violate this maxim, but relevant to this case, the Supreme Court has expressly ruled that

> [t]here is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Minnesota v. Murphy*, 465 U.S. 420, 435 (1984). As to incrimination, a communication is incriminating under the Fifth Amendment not only when it directly yields evidence to support a

criminal conviction, but when it "includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Von Behren*, 822 F.3d at 1144 (citation omitted). The danger of self-incrimination must be "real and appreciable," and not merely "imaginary and unsubstantial." *Id.* (citation omitted).

The Tenth Circuit addressed incrimination and compulsion in *United States v. Von Behren*, where the polygraph examination required the defendant to answer four questions that focused on the defendant's past sexual activity with minors, use of force or threats to engage in sexual activity, sexual contact with anyone who was unconscious, and sexual contact with family members. *Id.* at 1145. These questions corresponded to Colorado state criminal statutes, and three of the questions asked for the admission of a felony under state law. *Id.* at 1145 n.2–5. The polygraph examination at issue did not have other questions about the defendant's compliance with his supervised release. *Id.* at 1145. The Circuit explained that the defendant's answers could furnish a link in a prosecution against him for any of those potential crimes or could lead to an investigation of the defendant for such crimes. *Id.* The Circuit also ruled that the questions were compulsory because the government's position was that if the defendant did not answer the questions, then he would be terminated from the treatment program which in turn would result in a petition to revoke supervised release for violating conditions of supervision. *Id.* at 1150. The Circuit found that "[a] witness is compelled under the Fifth Amendment as soon as the Government threatens him with a substantial penalty—it makes no difference whether he proceeds with answering or stands on his right." *Id.* at 1151.

Castillo relies on *Von Behren* to argue that the "mandatory condition of polygraph examinations as part of supervised release is compulsion in violation of the Fifth Amendment."

5

Doc. 30 at 9. However, a careful reading of the opinion in *Von Behren* does not support Castillo's contention in the instant matter. First, the Tenth Circuit in *Von Behren* did not impose a blanket ban on polygraph examinations as conditions of supervised release when ordered by a treatment provider, as Castillo suggests. *See* Doc. 30 at 8. Indeed, the Tenth Circuit has upheld the use of polygraph testing as a condition of supervised release as permissible when there is a history or conviction involving sexual abuse charges. *See United States v. Begay*, 631 F.3d 1168 (10th Cir. 2011). There is no indication that the Tenth Circuit in *Von Behren* intended to broadly overturn precedent allowing polygraph testing as a tool that district courts may use for treatment and rehabilitation of defendants, and for protection of the public, unless the polygraph questions conflict with the Fifth Amendment privilege against self-incrimination. *See* discussion *infra* (examining policy supporting polygraph testing).

More specifically, the ruling in *Von Behren* is distinguishable from Castillo's case on both the incrimination and compulsion grounds. As to incrimination, the specific questions that focused on past sexual crimes in *Van Behren* are not present here. The Court agrees with the Government that "there is no indication that any polygraph question would involve the risk of self-incrimination" at this stage. *See* Doc. 32 at 9. Castillo did raise the issue at the hearing by arguing that he had no assurances that his statements would not be used in future prosecution. However, compared to the incriminating questions in *Von Behren*, the danger of self-incrimination to Castillo is hypothetical, "imaginary and unsubstantial" at this point. 822 F.3d at 1144; *see also United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) (ruling that the court could address the constitutionality of the polygraph condition generally, but that real, non-speculative questions are required to raise a ripe Fifth Amendment issue). To address the incrimination issue, Castillo also argued at the hearing that the examiner should disclose the content of the questions to defense

6

counsel ahead of time so that counsel can advise Castillo about Fifth Amendment protections. The Court rejects this proposition because it renders the polygraph examination useless for the purpose of discerning compliance with conditions of supervised release and detecting potential recidivist behavior (*see* discussion *infra*). Castillo has the right to assert his Fifth Amendment privilege, but he does not have the right to ascertain ahead of time every question a polygraph examiner may ask.

On the issue of compulsion, analysis of the facts in the *Von Behren* case is persuasive of why Castillo's polygraph testing in this case is not compulsory. In *Von Behren*, the Circuit pointed out that revocation of the defendant's post-conviction supervised release in that case was the threatened penalty for not answering the questions in the polygraph examination, and the Circuit ruled that "a threat to revoke one's probation for properly invoking his Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose." 822 F.3d at 1150. The Circuit distinguished the facts in *Von Behren* from the facts in the older case of *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984), by explaining that "Fifth Amendment jurisprudence did not apply to Mr. Murphy because his probation officer neither affirmatively stated nor implied that Mr. Murphy's assertion of the privilege would result in the revocation of his probation. In other words, there was no threat." *Id.* at 1149 (citing *Murphy*, 465 U.S. at 438). The Circuit pointed out that although one of the conditions in *Murphy* was that the defendant be truthful with his probation officer, the terms said "nothing about his freedom to decline to answer particular questions and . . . contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." 822 F.3d at 1149 (citing 465 U.S. at 437).

The same distinction holds true in this case. The Government maintains that "should some questions arise that would lead to a compulsory self-incrimination, Castillo may be allowed to

7

assert his Fifth Amendment privilege, but not until that time." Doc. 32 at 8. At this stage, this polygraph condition is more like the one in *Murphy*, as there is no substantial threat to Castillo because there is no indication that if he asserts his Fifth Amendment privilege, then his supervised release will be revoked, or that his supervised release is conditional on his waiver of Fifth Amendment protection. *See Murphy*, 465 U.S. at 436 (stating the inquiry is whether the "conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went further and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent."); *id.* ("A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege.").

The Court acknowledges, however, that the Tenth Circuit in *Von Behren* included some cautionary language about the implementation of polygraph testing as a condition of supervised release associated with the sex offense-specific assessment. *See* 822 F.3d at 1146 ("The district court mistakenly assumed that an assurance from the government was a substitute for immunity."); *id.* (concluding there was risk of incrimination because "the answers to the four mandatory questions could focus an investigation—otherwise ignorant of his past sex crimes—on Mr. Von Behren, and also because his confession to these past crimes could potentially be used against him at trial under Fed. R. Evid. 413 and 414"). On the issue of compulsion, should the Government or the probation officer change their positions so that Castillo will be in danger of revocation if he validly asserts his Fifth Amendment privilege, then the circumstances of the compulsion analysis may be more akin to those in *Von Behren*. And while neither the Court nor the parties are privy to the nature of the polygraph questions at this time, in part because a treatment provider has not determined whether Castillo will undergo a polygraph examination in the future, the Court is aware

of the potential for the questions to become incriminating. The shift from "imaginary and unsubstantial" risk of incrimination to "real and appreciable" danger of incrimination could occur during the polygraph test. *See Von Behren*, 822 F.3d at 1144. While the Fifth Amendment privilege requires that the statements be both incriminating and compulsory, the Court cannot discern the nature of the questions and thus the substance of the questions is not ripe for review. *Cf. United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) ("By determining a challenge to the polygraph testing requirement to be generally ripe, however, we do not imply that all specific challenges to the implementation of this condition are necessarily ripe.").

Therefore, Castillo's objection to the imposition of the polygraph condition on Fifth Amendment grounds is **OVERRULED at this time.** However, if the facts underlying this ruling change so that either compulsion or incrimination become a non-hypothetical, ripe legal issue, then Castillo **MAY** petition this Court for a modification to the terms of supervised release or raise a Fifth Amendment challenge at that time, and the Court will proceed accordingly.

## II.     Improper Delegation Challenge

Castillo next argues that the polygraph condition, which requires that he "must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider," Doc. 25-1/Doc. 34-1, is an unconstitutional delegation of judicial power to the probation officer or treatment provider because it gives the probation officer or provider discretion to order a polygraph test. Doc. 30 at 9. Castillo cites to the Tenth Circuit's recent decision in *United States v. Cabral*, in which the Tenth Circuit ruled that the risk notification condition[2] was an

---

[2]     The risk notification condition provided that if the probation officer determined the defendant to be a risk to another person, then the probation officer could require the defendant to notify the person of the risk. 697 F.3d at 691.

9

unconstitutional delegation of decisionmaking authority to the probation officer.[3] *See United States v. Cabral*, 926 F.3d 687, 697 (10th Cir. 2019).

As the Circuit explained in *Cabral*, "Article III of the United States Constitution confers the authority to impose punishment on the judiciary, and the judiciary may not delegate that authority to a nonjudicial officer." 926 F.3d at 697 (citing *United States v. Bear*, 769 F.3d 1221, 1230 (10th Cir. 2014)). When there is an improper delegation challenge to a supervised release condition, "we distinguish between permissible delegations that merely task the probation officer with performing ministerial or support services related to the punishment imposed and impermissible delegations that allow the officer to decide the nature or extent of the defendant's punishment." *Id.* This inquiry thus turns "on the liberty interest affected by the probation officer's discretion[,]" and giving the probation officer the authority to "restrict a defendant's significant liberty interest constitutes an improper delegation" of judicial authority. *Id.* In *Cabral*, the impermissible delegation was that the condition allowed the probation officer to define the term "risk" without meaningful guidance, and that determination would have affected a broad range of liberty interests. *Id.* at 697–99 (describing the liberty interests as "any number of things" including mental health issues and drug use, to a "hypothetical future rape investigation," impacting "girlfriends, family, living," occupation, and the "fundamental right of familial association").

Castillo argues that the polygraph condition improperly delegates to the probation officer or treatment provider the decision making authority of whether to subject Castillo to this "invasive procedure." Doc. 30 at 9. Unlike the risk notification condition in *Cabral*, however, the polygraph condition in this case does not involve a "significant additional restriction on his liberty." *United*

---

[3] The parties already agreed that the risk notification condition in this case should be amended in accordance with the decision in *Cabral* and with this Court's Administrative Order. *See* Doc. 32 at 3; Doc. 34-1, Amended Conditions of Supervised Release.

*States v. Begay*, 631 F.3d 1168, 1175 (10th Cir. 2011). In fact, the Tenth Circuit expressly rejected the argument that polygraph testing affects a significant liberty interest in *United States v. Begay*:

> We have held that special conditions constitute a greater than necessary deprivation of liberty when they infringe upon fundamental liberty interests, such as familial association. Although polygraph testing may be invasive and anxiety-provoking, it does not rise to this level. We have approved special conditions that involve a greater level of intrusion into a supervisee's life, such as a condition permitting suspicionless searches of the supervisee's person, property, and automobile.

*Id.* Castillo has not explained how the polygraph testing condition imposes a significant restriction on his liberty interests. Accordingly, and under *Begay*, the Court rejects the argument that the polygraph condition is an improper delegation of judicial decisionmaking. *See Cabral*, 926 F.3d at 698 (noting the risk notification condition allowed the probation officer to impact "boundless scenarios implicating various liberty interests[,]" so it was an improper delegation of judicial decisionmaking).

### III. Statutory Purposes Under 18 U.S.C. § 3583(d)

District courts have broad judicial discretion in determining the special conditions of a defendant's supervised release as long as the conditions imposed are consistent with constitutional pillars and "satisfy the three statutory requirements laid out in 18 U.S.C. § 3583(d)." *United States v. Mike,* 632 F.3d 686, 692 (10th Cir. 2011). The conditions of a defendant's supervised release must be reasonably related to at least one of factors provided by 18 U.S.C. § 3583(d)(1): the nature and circumstances of the offense, the defendant's history and characteristics, deterrence of criminal conduct, protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs. *See* 18 U.S.C. § 3583(d)(1). Second, the statute requires that the conditions must involve no greater deprivation of liberty than is reasonably necessary to achieve these goals. *See id.* at § 3583(d)(2). Finally, the conditions must

be consistent with any pertinent policy statements issued by the Sentencing Commission. *See id.* at § 3583(d)(3).

Castillo argues that the probation officer has not identified how the polygraph condition is reasonably necessary to achieve the statutory purposes referenced in 18 U.S.C. § 3583(d). Doc. 30 at 9. Citing to several reports and articles that highlight shortcomings of polygraph testing, Castillo "disputes the therapeutic benefits of such testing and stresses many ethical concerns raised by the use of such testing by treatment providers." Doc. 30 at 9–10 (citing Nat'l Res. Council, *The Polygraph and Lie Detection*, 86 (2003); Melissa Hamilton, *Briefing the Supreme Court: Promoting Science or Myth?*, 67 Emory L.J. Online 2021, 2033–34 (2017) (available at http://law.emory.edu/elj/elj-online/volume-67/essays/briefing-supreme-court-sciencemyth.html); Christopher Lobanov-Rostovky, et al. *Sex Offender Management Assessment and Planning Initiative* (SMART Report) 188, 189 (March 2017) (available at SMART.gov/SOMAPI)). Castillo points to these sources to support his contention that false positive rates, false negative rates, ambiguous questions, and confirmation bias are variables found in polygraph testing that cause it to be unreliable. Doc. 30 at 10. Castillo argues these uncontrollable variables and consequences make polygraph testing a "controversial practice" that cannot meet the statutory purposes in 18 U.S.C. § 3583(d). *Id.*

The Court agrees with the Government that the Tenth Circuit has ruled that polygraph testing is permissible as a condition of supervised release when the record supports a reasonable relation to just even one of the statutory purposes. *See Begay*, 631 F.3d at 1174 (affirming polygraph condition and noting that "[a] condition need not be reasonably related to all the listed § 3553(a) factors, as long as it is reasonably related to one or more of the factors."). In *Begay,* the defendant made the same kind of argument to the district court about the unreliability of polygraph

testing, and the Circuit affirmed the district court's decision to impose the polygraph condition. *Id.* The Circuit noted, despite some hesitation about the accuracy of polygraph testing, that polygraphs can encourage defendants to be truthful with their probation officers and alert probation officers to potential problems that may prompt further supervisory inquiry. *Id.* at 1175. The Circuit also noted that while the polygraph results may be inadmissible as evidence under *Daubert* standards and the Federal Rules of Evidence, the imposition of a polygraph condition is not an abuse of discretion when the district court determines that it is an "effective supervision and rehabilitation tool" in consideration of the relevant 18 U.S.C. § 3553(a) factors. *Id.* at 1174–75.

However limited the admissibility of evidence procured through a polygraph examination may be for trial, when it comes to the statutory purposes of supervised release, polygraph testing can be an effective method in a multi-component plan for "assessment of risk factors and identification of treatment needs[.]" SMART Report at 191 ("Polygraphs should be used as one component of an overall sex offender management strategy."). The Government is not seeking to have polygraph statements submitted to the Court subject to *Daubert* and evidentiary standards—rather, the Government and the United States Probation Officer ask the Court to impose this condition because it is an effective tool for ongoing monitoring during the term of supervised release following a sexual abuse conviction, a position that the Tenth Circuit and other circuits have affirmed or noted with approval. *See Begay*, 631 F.3d at 1175; *see also United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) ("The polygraph can help penetrate deception and encourage an offender to confront his own motivations and behaviors. These outcomes further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty."); *United States v. Lee*, 315 F.3d 206 (3d Cir. 2003) (polygraphs may be used for treatment and deterrence); *United States v. Dotson*, 324 F.3d 256 (4th Cir. 2003) (same);

13

*United States v. Zinn*, 321 F.3d 1084, 1090 (11th Cir. 2003) ("[W]e conclude polygraph testing to ensure compliance with probationary terms is both reasonably related to Appellant's offense and personal history, and when reasonably applied will not unduly burden his rights."); *United States v. Wilson*, No. 98-5373, 1998 WL 939987, at *3 (6th Cir. Dec. 22, 1998) (stating that polygraphs are "tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions").

In this case, the Court finds that the polygraph condition satisfies the relevant § 3553(a) factors referenced by § 3583(d) for setting the conditions of Castillo's supervised release. First, regarding the nature and circumstances of the offense and Castillo's history and characteristics, the Court agrees with the probation officer that the polygraph condition is appropriate in this case. In Castillo's sexual abuse of a minor case that was before Judge Brack, from which the sex offender registration requirement originated, Castillo admitted in his Plea Agreement that he knowingly engaged in sexual intercourse with Jane Doe, who was fourteen years old at the time. 15-cr-1802, Doc. 34, ¶ 9. The PSR in the instant case provides the facts underlying the conviction in the earlier case, including that Castillo sought out Jane Doe on Facebook; that Castillo ignored the attempts of Jane Doe's mother to prohibit him from seeing Jane Doe; that Castillo invited Jane Doe to meet him in person more than once; and that Castillo admitted to the FBI agent that he forced sexual intercourse upon Jane Doe, that he committed the assault over the protests of Jane Doe, and that he took Jane Doe to another property to commit the assault. PSR, ¶ 34. These underlying facts support the Court's determination that the extensive and ongoing supervision provided through polygraph testing in combination with other methods will benefit the rehabilitation of Castillo as well as the important interest of protecting the public at large, by alerting the probation officer to concerns about recidivism given Castillo's prior insistence on meeting Jane Doe in person prior to

the assault. Castillo's persistent and predatory efforts to contact Jane Doe via online social media, to ignore her mother's authority, and to evade detection by taking Jane Doe to a different location are facts that support the high degree of supervision to which Castillo should be subjected, so as to ensure his compliance with his conditions in the future, deter future criminal conduct, and protect the public by deterring recidivist behavior.

Furthermore, Castillo's conduct that resulted in the revocation of his supervised release in the earlier sexual abuse case also led to this new case where Castillo was charged by separate indictment for failing to update sex offender registry information. Castillo's abscension from the halfway house for a period of several months, during which time he failed to update his contact information with the probation officer or with the sex offender registry, indicates that he had an enduring intent to flee. Polygraph testing could address this concern in the future because a failed polygraph can trigger intervention or more frequent contact by the probation officer. Such intervention by the probation officer could prevent future attempts to abscond or violate other conditions of release, including conditions about sexual behavior and non-sexual behavior. *See* PSR, ¶ 34 (detailing Castillo's several violations of his terms of supervised release before Judge Brack, including illegal substance abuse, viewing or possessing sexually explicit materials, and alcohol use).

Finally, the Court notes that the Tenth Circuit in *Begay* affirmed the sentencing judge's use of the polygraph condition as one that "involves no greater deprivation of liberty than is reasonably necessary" to achieve the statutory goals of supervised release. *See* 18 U.S.C. § 3583(d)(1); *Begay*, 631 F.3d at 1175–76 (explaining that polygraph testing does not rise to the level of depriving a fundamental interest). The Court finds that imposing the polygraph condition in this matter does not require a greater deprivation of liberty than is reasonably necessary to achieve the goals of

15

supervised release because the polygraph testing condition is an effective method of supervision considering the nature and circumstances of the offense and Castillo's history and characteristics; is useful for deterring criminal conduct and future recidivism; will protect the public from potential further crimes of Castillo; and accounts for Castillo's educational, vocational, medical, or other correctional needs. Castillo shall be required to undergo sex offender treatment with therapy sessions with his treatment provider and frequent meetings with his probation officer, so the polygraph test condition is not a further infringement on his rights. *See id.*

## CONCLUSION

For the foregoing reasons, Castillo's objection to the polygraph condition is hereby **OVERRULED**. Sentencing in this case shall be scheduled accordingly.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE